IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00482-KLM

LEO S. LOPEZ,

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.
_____

# ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court[1] on the **Social Security Administrative Record** [#11],[2] filed April 22, 2019, in support of Plaintiff's Complaint [#1] seeking review of the decision of Defendant Andrew Saul, Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claim for supplemental security income benefits pursuant to Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1381 et seq. On June 3, 2019, Plaintiff filed an Opening Brief [#17] (the "Brief"), Defendant filed a Response [#18] in opposition, and Plaintiff filed a Reply [#19]. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). The Court has reviewed the entire case file and the applicable law and is sufficiently advised

---

[1] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See* [#13, #20].

[2] "[#11]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

in the premises. For the reasons set forth below, the decision of the Commissioner is **REVERSED** and **REMANDED**.

## I. Factual and Procedural Background

Plaintiff alleges that he has been disabled since November 1, 2010. Tr. 51.[3] On June 18, 2015, Plaintiff filed an application for supplemental security income under Title XVI. Tr. 51. On January 22, 2018, an Administrative Law Judge (the "ALJ") issued an unfavorable decision. Tr. 62.

The ALJ determined that Plaintiff had not engaged in substantial gainful activity ("SGA") since June 18, 2015, the application date. Tr. 53. The ALJ found that Plaintiff suffers from three severe impairments: (1) major joint dysfunction; (2) visual impairment; and (3) organic mental impairment. Tr. 53. However, the ALJ also found that Plaintiff does not have an impairment or combination of impairments which meets or medically equals "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)." Tr. 53. The ALJ next concluded that Plaintiff has the residual functional capacity ("RFC") to perform light work with the following abilities and limitations:

> [H]e is able to lift and carry twenty (20) pounds occasionally and ten (10) pounds frequently. He is also able to stand and walk for six (6) hours in an eight (8) hour workday, and sit for six (6) hours in an eight (8) hour workday. He can occasionally climb ramps and stairs but he can never climb ladders, ropes and scaffolds. He is able to frequently crawl. He can never be around unprotected heights or heavy machinery. He cannot drive and can only read 14 font or larger. Mentally, he is limited to simple routine tasks and socially, he can maintain only occasional interaction with the general public.

---

[3] The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 11 through 11-19 by the sequential transcript numbers instead of the separate docket numbers.

Tr. 19. Based on the RFC and the testimony of an impartial vocational expert ("VE"), the ALJ found that Plaintiff could not perform his past relevant work as a roof helper or a fast food worker, but found that there are jobs which exist in significant numbers in the national economy which Plaintiff can perform, including the representative occupations of production assembler, small product assembler, and collator operator. Tr. 60-62. The ALJ therefore found Plaintiff not disabled at step five of the sequential evaluation. Tr. 62. The ALJ's decision has become the final decision of the Commissioner for purposes of judicial review. 20 C.F.R. § 416.1481.

## II. Standard of Review and Applicable Law

Pursuant to the Act:

> [T]he Social Security Administration is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)). Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); *see also Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (quoting 20 C.F.R. § 416.905(a)). The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Court reviews a final decision by the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). However, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Harper v. Colvin*, 528 F. App'x 887, 890 (10th Cir. 2013) (quoting *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000)). In other words, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F. 3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it *de novo*." *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

**A.     Legal Standard**

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. *See* 20

C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent step or steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."). The Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether a claimant is "presently engaged in substantial gainful activity." *Wall*, 561 F.3d at 1052 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). If not, the ALJ considers at step two whether a claimant has "a medically severe impairment or impairments." *Id.* "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Wall*, 561 F.3d at 1052 (citing 20 C.F.R. § 404.1521). Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings." *Wall*, 561 F.3d at 1052 (quoting *Allen*, 357 F.3d at 1142). "If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him or her] from performing [his or her] past relevant work." *Wall*, 561 F.3d at 1052 (citing *Allen*, 357 F.3d at 1142). "Even if a claimant is so impaired, the agency considers, at step five, whether [he or she] possesses the sufficient [RFC] to perform other work in the national economy." *Id.*

B.  **Substantial Evidence**

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). However, the ALJ need

not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d at 1148. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1140 (internal quotation marks omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record . . . ." *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). Further, evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III. Analysis

Plaintiff requests judicial review of the ALJ's decision denying him supplemental security income. *Brief* [#17]. First, Plaintiff argues that the ALJ erred by failing to account for limitations related to Plaintiff's mental health in the RFC proposed to the VE. *Id.* at 4-6. Second, Plaintiff argues that the ALJ erred by improperly evaluating two medical opinions. *Id.* at 6-11. The Court begins with the second argument.

**A.     Step Four: Medical Opinions**

Plaintiff argues (1) that the ALJ erred by dismissing the opinion of consultative examiner Russell Thye, Ph.D. ("Thye"), and (2) that the ALJ erred in her evaluation of the

opinion of ophthalmologist Andrew M. Norris, M.D. ("Norris").[4]  *Id.*

## 1. Dr. Thye

Plaintiff argues that the ALJ erred by giving "little weight" to the medical opinion of Dr. Thye, a consultative examiner who examined Plaintiff once in November 2015. Tr. 310-16.

An ALJ must consider and weigh opinions of non-treating physicians based on factors listed in the regulations. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). These relevant factors include: (1) whether there is an examining relationship; (2) whether there is a treatment relationship (including the length of the treatment relationship, the frequency of examination, and the nature and extent of the treatment relationship); (3) whether the medical opinion is supported by evidence; (4) consistency of the opinion with the record as a whole; (5) whether the physician is a specialist in the relevant area; and (6) any other factors brought to the ALJ's attention, including "the amount of understanding of [the agency's] disability programs and their evidentiary requirements that a medical source has" and "the extent to which a medical source is familiar with the other information in [the claimant's] case record." 20 C.F.R. § 416.927(c).[5]  Although the six factors are to be considered in weighing medical opinions, the Court does not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any

---

[4] The opinion at issue was actually written by Gina H. Kim, M.D. ("Kim"), who appears to be Dr. Norris's partner. Tr. 778-94. The first page of the report lists "Andrew M. Norris MD PC" as the person/vendor to whom payment should be made. Tr. 778. Because both the ALJ and Plaintiff refer to Dr. Norris's report, the Court will also do so here, in the interest of clarity, despite the fact that the report seems to have been authored by Dr. Kim. Tr. 781. The authoring physician's personal background is not material for resolution of the issues raised in the Brief.

[5] This regulation is effective for all claims filed before March 27, 2017. 20 C.F.R. § 416.927. Plaintiff's claim was filed on June 18, 2015. Tr. 51.

subsequent reviewers the weight the adjudicator gave to the . . . medical opinion and the reasons for that weight.'" *Oldham*, 509 F.3d at 1258 (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).

In connection with Dr. Thye's opinion, the ALJ stated:

> [T]he claimant also stated that his ability to maintain employment was also reduced by an organic mental impairment and anxiety related to post-traumatic stress. The record does not include a record of on-going mental health treatments. Additionally, the claimant sought medical services for a variety of physical issues. During these visits, he either exhibited normal psychological abilities or denied symptoms of depression and anxiety. Due to the lack of mental health treatment notes, the claimant was provided with a psychological assessment with a detailed mental status exam performed by [Dr. Thye].
>
> During the interview, the claimant stated that he was unable to perform basic daily activities unassisted, that he was unable to shave himself, and that he was incapable of performing any household chores. While being interviewed the claimant exhibited a neurological episode, during which he shook and exhibited some erratic and jerky head and upper body movements, but he was able to speak during the episode. After several minutes, he was able to respond to questions and he reported that he experienced these episodes several times a day. Dr. Thye concluded that the claimant would experience marked limitations in every aspect of maintaining work, including concentrating, socializing, and completing simple tasks. These opinions are based on a single office visit and are not supported by the medical record. As noted above, the claimant underwent a neuropsychological examination performed by a neurologist and there was "no objective evidence to suggest acquired cerebral dysfunction or neurodegenerative process in the brain." Additionally, while the claimant maintained his medication regime his episodes were "small" and he specifically reported that his medications "seems [sic] to be working." Therefore, the undersigned gave little weight to Dr. Thye's opinions.

Tr. 59 (internal citations omitted).

Plaintiff primarily argues that Dr. Thye's opinion should have been given more weight than that of MaryAnn Wharry, Psy.D. ("Wharry"), a non-examining agency medical consultant, whose opinion was given "great weight." *Brief* [#17] at 8; Tr. 59, 114. The ALJ addressed her opinion as follows:

-8-

> As for opinion evidence, the undersigned has considered the administrative findings of fact made by State agency consultants regarding the claimant's mental capacity to perform work-related functions. The opinions are weighed as statements from non-examining expert sources. The State agency consultants stated the claimant had mild limitation in his activities of daily living, moderate limitation in social functioning, moderate limitation in concentration, persistence, and pace. The consultants further stated the claimant can perform at a consistent pace without an unreasonable number of rest periods and he should have limited contact with the public. Based on the evidence, the undersigned concludes the State agency consultants adequately considered the medical evidence of record regarding the claimant's mental impairments and great weight given to the opinions. The opinions are supported by the evidence indicating the claimant's bipolar disorder is severe and causes some limitation as it required monthly psychological sessions and medical management. However, as indicated in the claimant's medical record, there were no reported psychosis or other significant mental symptoms from the claimant's psychologist. Furthermore, during numerous examinations, the claimant exhibited normal cognitive and social abilities and denied symptoms of depression and anxiety. Although the undersigned finds slightly different limitations than the State agency consultants based on the record as a whole, the undersigned reasons that the State agency consultants' findings are consistent with the determination that the claimant is capable of significant work-related activities.

Tr. 59-60 (internal citations omitted).

Typically, all else being equal, the opinion of an examining medical consultant is to be given more weight than a non-examining medical consultant. 20 C.F.R. § 416.927(c)(1) ("Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you."). Thus, if the ALJ had simply discounted Dr. Thye's opinion for having only examined Plaintiff once without "simultaneously discount[ing] [Dr.] Wharry's opinion for never having personally examined" Plaintiff, this may well have been reversible error. *Brief* [#17] at 8-9; *see, e.g.*, *Harbin v. Colvin*, No. 13-cv-136-TLW, 2014 WL 2738483, at *5 (N.D. Okla. June 17, 2014) ("Ordinarily, a treating physician's opinion is given the most weight, followed by the examining physician's opinion. Nonexamining physicians' opinions are normally entitled

to the least weight of all. If the ALJ determined that [the nonexamining agency physician's] opinion was due greater weight than that of [the consultative examining physician], the ALJ should have explained his reasons for that decision." (internal citations omitted)).

However, the ALJ also compared the opinions with the record as a whole to determine their consistency. Tr. 59-60; *see Quintero v. Colvin*, 567 F. App'x 616, 620 (10th Cir. 2014) (stating that the consistency of a physician's opinion with the record as a whole is a legitimate factor to be considered in evaluating the opinion) (citing 20 C.F.R. § 416.927(c)(4)). Plaintiff argues that the two comparisons to the record made by the ALJ are insufficient grounds on which to discount Dr. Thye's opinion. *Brief* [#17] at 9-10.

The first comparison was to a report by William R. Shaffer, M.D. ("Shaffer"), who quoted Dr. DeJong Lago ("Lago") (who met with Plaintiff on October 14, 2016, to go over results of earlier neuropsychological testing) as stating that there was "no objective evidence to suggest acquired cerebral dysfunction or neurodegenerative process in the brain." Tr. 59 (citing Tr. 976). Although the ALJ relied on Dr. Lago's opinion, as quoted in Dr. Shaffer's report, the ALJ conducted no analysis of the weight Dr. Lago's opinion should be given; indeed, she could not do so, given that Dr. Lago's original opinion, and the evidence underlying that opinion, are apparently not in the record. Without such an analysis, the Court finds that discounting Dr. Thye's opinion on the basis of Dr. Lago's opinion was error. *See Oldham*, 509 F.3d at 1258 (stating that ALJ must make clear her reasons for the weight given to a medical opinion).

The second comparison was to another appointment with Dr. Shaffer, who noted at that time that Plaintiff told him that "while [he] maintained his medication regime his episodes were 'small' and he specifically reported that his medications 'seems [sic] to be

working.'" Tr. 59 (citing Tr. 810). To the extent the ALJ relies on this statement to discount Dr. Thye's opinion, the Court finds that further explanation is necessary. *See Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (stating that, even though the Court does not insist on "technical perfection" in an ALJ's decision, the Court must be able to follow the ALJ's reasoning). For example, what does "small" mean, and how do "small" episodes impact Plaintiff's ability to work? Plaintiff states in the medical record that the episodes were "not as bad as they were," but it is unclear how this compares to Dr. Thye's findings. Further, given that an examining consultant's opinion is generally to be given greater weight than a non-examining consultant's opinion, is this one statement by Plaintiff nevertheless enough to relegate Dr. Thye's opinion to "little weight" while allowing Dr. Wharry's opinion as being given "great weight"? These are questions which the Court finds that the ALJ should address in the first instance on remand. Without further explanation, the Court cannot find that the ALJ's opinion here is supported by substantial evidence. *See generally Richarson v. Perales*, 402 U.S. 389, 401 (1971).

    **2.    Dr. Norris**

Plaintiff also argues that the ALJ erred in her evaluation of Dr. Norris's opinion. *Brief* [#17] at 10-11. In connection with her opinion, the ALJ stated:

> Prior to the claimant's keroplastic surgery and prescription contacts, [Dr. Norris], an examining ophthalmologist opined that the claimant was unable to work due to his inability to work . . . "with any size object, [or] read normal print," and that he would not be able to avoid some hazards due to his "current" vision. As noted above, the claimant's vision significantly improved with surgery and corrective lenses. These opinions were accurate at the time, but the[y] are inconsistent with the post-surgical treatments, therefore they are given little weight.

Tr. 57 (internal citations omitted).

Plaintiff points to the fact that the relevant onset date of his alleged disability is June

-11-

18, 2015, the date of his application on his supplemental security income claim. *Brief* [#17] at 10-11; Tr. 51. Plaintiff notes that, "[a]ccording to the [ALJ's] own reasoning, [Plaintiff's] vision was so severe that he was disabled from that date until at least July 15, 2016 based on the vision impairment alone." *Brief* [#17] at 11. Therefore, Plaintiff continues, "[a]s this is a period of more than 12 months, [Plaintiff] should have been awarded benefits for that duration at minimum." *Id.* Accordingly, Plaintiff asserts that, "[o]n this issue alone, [Plaintiff] is entitled to a remand and a closed period award." *Id.* Defendant responds that the ALJ's reason for discounting the opinion was valid and that the longitudinal medical evidence does not support Plaintiff's "claims that he was solely disabled due to vision problems" from June 2015 to July 2016. *Response* [#18] at 19-20.

First, the Court notes that it may not accept Defendant's post hoc reasoning that the longitudinal medical record does not support Plaintiff's claim. *See Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) (stating that the Court "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself). The ALJ herself stated that Dr. Norris's opinions were accurate at the time they were made. Tr. 57. Rather, Dr. Norris's opinions were simply inconsistent with Plaintiff's later vision status due to intervening events, i.e., surgery and corrective lenses. Tr. 57. The Court agrees, and, indeed, Plaintiff does not contest, that the ALJ appropriately evaluated Dr. Norris's opinions. *Brief* [#17] at 10-11; *Reply* [#19] at 5-6. Rather, the sole issue is what this means, and whether the ALJ should have awarded Plaintiff benefits for the thirteen-month period between when he filed his application and when he had the surgery and got the corrective lenses. *Id.*

Neither party cites any case law on this issue, and Defendant tries to side-step it

altogether with its longitudinal argument which the Court has already rejected above. "In a 'closed period' case, the decision maker determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision." *Shepherd v. Apfel*, 184 F.3d 1196, 1199 n.2 (10th Cir. 1999) (quoting *Pickett v. Bowen*, 833 F.2d 288, 289 n.1 (11th Cir.1987)). "Typically, both the disability decision and the cessation decision [in a closed period case] are rendered in the same document." *Id.*

In *Shepherd v. Apfel*, 184 F.3d at 1202, "there was a period between December 1992 and July 1993 during which the claimant may have been eligible for benefits." The Tenth Circuit Court of Appeals held that the "medical improvement test" applied in such circumstances, stating:

> In order to determine whether disability continues or ends, the commissioner must determine "if there has been any medical improvement in [a claimant's] impairment(s) and, if so, whether this medical improvement is related to [the claimant's] ability to work." 20 C.F.R. § 404.1594(a). The regulations contain definitions and examples of when medical improvement is related to the ability to do work, and when it is not so related. *See id.* at § 404.1594(b)(2) and (b)(3).
>
> To apply the medical improvement test, the ALJ must first compare the medical severity of the current impairment(s) to the severity of the impairment(s) which was present at the time of the most recent favorable medical decision finding the claimant disabled. *See id.* at § 404.1594(b)(7). Then, in order to determine that medical improvement is related to ability to work, the ALJ must reassess a claimant's residual functional capacity (RFC) based on the current severity of the impairment(s) which was present at claimant's last favorable medical decision. *See id.* at § 404.1594(c)(2). The ALJ must then compare the new RFC with the RFC before the putative medical improvements. The ALJ may find medical improvement related to an ability to do work only if an increase in the current RFC is based on objective medical evidence. *See id.*

*Shepherd*, 184 F.3d at 1201 (internal footnote omitted).

Here, the ALJ engaged in no such analysis. Given the ALJ's statements about the

-13-

accuracy of Dr. Norris's statements at the time they were rendered, the Court finds that the ALJ committed reversible error for failing to engage in a closed-period analysis of Plaintiff's RFC.[6]

## IV. Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the decision of the Commissioner that Plaintiff is not disabled is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.[7]

IT IS FURTHER **ORDERED** that Plaintiff is **AWARDED** his costs, to be taxed by the Clerk of the Court pursuant to Fed. R. Civ. P. 54(d)(1), D.C.COLO.LCivR 54.1, and 28 U.S.C. § 2412(a)(1). See Knuutila v. Colvin, 127 F. Supp. 3d 1146, 1153 (D. Colo. 2015).

IT IS FURTHER **ORDERED** that the Clerk of Court shall **enter** judgment in favor of Plaintiff and **close** this case.

Dated: December 16, 2019

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge

---

[6] Given the Court's holdings regarding the ALJ's step-four decision and the likely impact they will have at step five of the analysis upon remand, the Court need not address Plaintiff's step five arguments at this time. See, e.g., Wignall v. Colvin, No. 14-cv-03327-KLM, 2016 WL 1253623, at *8 n.6 (D. Colo. Mar. 31, 2016).

[7] The Court finds that this case does not present a proper occasion on which to exercise its discretion and direct the award of benefits. See Nielson v. Sullivan, 992 F.2d 1118, 1122 (10th Cir. 1993). By reversing the ALJ's decision, the Court does not find or imply that Plaintiff is or should be found disabled. See, e.g., Knuutila v. Colvin, 127 F. Supp. 3d 1146, 1152 n.5 (D. Colo. 2015).